**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Coby, II,<br><br>   Plaintiff,<br><br>v.<br><br>City of Tombstone, et al.,<br><br>   Defendants. | No. CV-25-00226-TUC-JGZ<br><br>**ORDER** |

Pending before the Court is Defendants City of Tombstone, Jim Adams, Marshall Sharp, Rebecca Larsen McKeown, and Jeff Garcia's Motion for Judgment on the Pleadings. (Doc. 16.) The remaining defendants joined the Motion. (Docs. 20, 22, 24.) The Motion is fully briefed. (*See* Docs. 26, 27, 28, 29, 32, 35.) For the reasons set forth below, the Court will deny in part and grant in part Defendants' Motion.

**I.   Standard of Review**

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Rule 12(c) is functionally identical to Rule 12(b)(6) and the same standard of review applies to motions brought under either rule." *Fortinet, Inc. v. Forescourt Techs., Inc.*, 730 F. Supp. 3d 958, 963 (N.D. Cal. 2024) (cleaned up) (quoting *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). "Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Parker v.*

*County of Riverside*, 78 F.4th 1109, 1112 (9th Cir. 2023) (quoting *Honey v. Distelrath*, 195 F.3d 531, 532 (9th Cir. 1999)). Judgment on the pleadings is also proper when there is either a "lack of cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

When ruling on a Rule 12(c) motion, courts have discretion to grant leave to amend, even if no request to amend the pleading has been made. *Schoene v. Spirit Airlines, Inc.*, 726 F. Supp. 3d 1248, 1255 (D. Or. 2024) (citing *Harris v. County of Orange*, 682 F.3d 1126, 1131, 1134–35 (9th Cir. 2012), and *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)). "Under Rule 15(a), courts should 'freely' grant leave to amend 'when justice so requires,' and absent 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments . . . undue prejudice to the opposing party . . . futility of the amendment, etc.'" *Id.* (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**II.  Complaint**

Plaintiff John Coby II is a police officer employed by the Tombstone Marshal's Office in Tombstone, Arizona. (Doc. 1 ¶ 11.) On November 19, 2024, Plaintiff was attacked by his assigned canine officer and seriously injured. (*Id.* ¶¶ 12–13, 35–36, 54–55.) Plaintiff alleges the dog was placed into service despite a history of attacks on its handlers and its name and records were falsified. (*Id.* ¶ 12.)

Defendant Constance Baker was Plaintiff's co-worker at the Tombstone Marshal's Office and the Training Director of its K9 program. (*Id.* ¶¶ 15, 39.) Baker also ran Defendant KnightWatch K9 ("KnightWatch"), a private company that provided canines to law enforcement. (*Id.* ¶ 15.) At all relevant times, Defendant Jim Adams was the Marshal of the City of Tombstone. (*Id.* ¶¶ 2–3.) Marshal Adams hired Baker and KnightWatch to supply dogs to the Tombstone Marshal's Office and train the dogs and their handlers. (*Id.* ¶ 15.) Neither the City, nor Marshal Adams, obtained a bid to hire a canine supplier or trainer, vetted Baker or KnightWatch, or supervised the canine program. (*Id.* ¶¶ 15, 47.)

On November 6, 2024,[1] Plaintiff picked up K9 Caine from Baker, to replace K9 Cupcake due to Cupcake biting Baker. (*Id.* ¶ 17.) Plaintiff observed that Baker had trouble controlling Caine, and Caine slipped out of his collar and ran around the property. (*Id.*) Caine did not respond to commands and would not answer to his name. (*Id.* ¶¶ 19–20.) Plaintiff told Baker that Caine was not obedience trained and that he was concerned he would not be able to complete the handler certification with Caine. (*Id.* ¶ 19.) Plaintiff attempted to return Caine, but Baker declined and told Plaintiff to bring Caine to the training site. (*Id.* ¶¶ 20–22.) At the training site, Baker admitted the dog had no obedience training and did not know basic commands. (*Id.* ¶ 23.) Plaintiff tried pulling Caine back to his truck, but Caine turned and bit Plaintiff twice, on the right and left inner thigh. (*Id.* ¶ 24.)

After Caine bit Plaintiff, Baker made false statements to investigators minimizing the seriousness of the bites. (*Id.* ¶¶ 25–27.) Plaintiff informed Jeff Garcia, another city employee, about the bites, and Garcia talked to Baker about the incident. (*Id.* ¶ 28.) Caine's rabies record showed the dog's name was Boris, and Baker told Garcia she changed the dog's name to Caine and that it was her common practice to change dogs' names. (*Id.*) On December 3, 2024, KnightWatch gave Caine to Rene Ordonez, an officer with the Maricopa County Police Department. (*Id.* ¶ 31.) Baker did not disclose to Ordonez that Caine attacked Plaintiff. (*Id.* ¶ 32.) Ordonez asked Border Patrol canine trainers about Caine's training history.[2] (*Id.* ¶¶ 31–32.) According to Caine's Border Patrol training records, Caine was afraid of people, afraid of the leash, and becomes aggressive. (*Id.*)

Then, on or around November 9, 2024, Coby was given K9 Hawk. (*Id.* ¶ 34.) Baker obtained Hawk from Defendants Alicia Via, Consuella Via, All Phase K9 Tactical, and Got Your Six K9 Rescue, Inc. (*Id.* ¶¶ 34, 49.) Hawk's medical record was whited out. (*Id.* ¶ 34.) Plaintiff alleges Baker and the Vias "knew of the dog's history and changed the

---

[1] The Complaint does not indicate when Baker began providing canines to Tombstone nor the extent of Plaintiff's experience with canine officers prior to November 2024, other than his attendance at a Handler course in 2023. (Doc. 1 ¶ 34.)

[2] The Complaint does not explain the chain of ownership for Caine, and it is unclear whether KnightWatch initially provided Caine to Border Patrol or whether Border Patrol provided Caine to KnightWatch.

documents." (*Id.* ¶ 49.) On November 19, 2024, Hawk attacked Coby at the Tombstone police station, biting his wrist, ankle, and leg. (*Id.* ¶¶ 35, 38–39, 54.) After a struggle lasting over three minutes, Plaintiff shot and killed Hawk with his service weapon. (*Id.* ¶¶ 36–37.) Plaintiff was seriously injured and air-evacuated to a hospital in Tucson; he suffered permanent scarring, nerve damage, and tissue loss. (*Id.* ¶¶ 54–55.)

In an interview after the attack, Baker and Marshall Sharp, the Tombstone Marshal Office's Assistant K9 Director, claimed that Plaintiff was heavy-handed and abusive with his canines. (*Id.* ¶¶ 3, 38–39.) The day of the attack, Sharp made similar false claims at City Hall and told Defendant Rebecca Larsen McKeown, a City of Tombstone public works employee, to write a letter to Adams saying Coby was heavy-handed. (*Id.* ¶ 40.) In the letter, McKeown stated she saw Plaintiff swing Hawk by the leash but later apologized and offered to recant the letter. (*Id.*) Baker, in a letter to investigators, stated that an individual named Tim Defoor witnessed Plaintiff punch Caine in the face. (*Id.* ¶ 41.) Defoor denies making that comment or observing Plaintiff abuse any dogs. (*Id.*)

On May 15, 2025, Plaintiff filed the Complaint in this case, asserting eight causes of action: (1) violation of the Due Process Clause of the Fourteenth Amendment and the state-created danger doctrine under 42 U.S.C. § 1983 and *Monell*; (2) conspiracy to deprive Plaintiff of his due process rights under 42 U.S.C. § 1985; (3) intentional infliction of emotional distress ("IIED"); (4) gross negligence; (5) fraud; (6) negligence/negligent misrepresentation; (7) fraudulent concealment; and (8) defamation/defamation per se. (*See* Doc. 1.)

**III.   Discussion**

In their Motion, Defendants raise five arguments in favor of judgment on the pleadings: (1) a failure to vet a dog or its trainer is not a constitutional tort claim; (2) qualified immunity shields the city officials from liability for Counts One and Two; (3) Plaintiff fails to allege race- or class-based animus, an element of a conspiracy claim under § 1985, as alleged in Count Two; (4) Plaintiff's *Monell* claim against Tombstone fails because it is based on a respondeat superior theory of liability rather than a municipal

- 4 -

policy, practice, or custom; and (5) Plaintiff's state law claims in Counts Three through Eight are barred under Arizona's workers' compensation exclusivity because Plaintiff accepted workers' compensation benefits. The Court first addresses arguments implicating Plaintiff's federal claims in Counts One and Two.

### A. Count Two – 42 U.S.C. § 1985

In Count Two, Plaintiff alleges the individual city officials and Baker conspired to place Plaintiff in a situation where he was harmed, depriving him of his right to be free from injury[3] in violation of 42 U.S.C. § 1985. (Doc. 1 ¶¶ 78–81.) Defendants argue Count Two fails because Plaintiff has not alleged any facts supporting a "conspiracy to obstruct justice because of race or class." (Doc. 16 at 7.) In his Opposition, Plaintiff does not respond to Defendants' argument. (*See* Doc. 26 at 7–12.)[4]

Section 1985 proscribes five types of conspiracies:

> (1) conspiracies to interfere with the performance of federal duties by federal officers, now covered by § 1985(1); (2) conspiracies to interfere with justice in the federal courts, now covered by the first clause of § 1985(2); (3) conspiracies to interfere with justice in the state courts "with intent to deny any citizen" "due and equal protection of the laws," now covered by the second clause of § 1985(2). . .; (4) private conspiracies to deny "any person or class of persons . . . the equal protection of the laws," now covered by the first clause of § 1985(3) . . .; and (5) conspiracies to interfere with voting in federal elections, now covered by the second clause of § 1985(3).

*Bretz v. Kelman*, 773 F.2d 1026, 1028–29 (9th Cir. 1985). Plaintiff's Complaint fails to specify under which subsection he brings his § 1985 claim,[5] quotes language from subsection (3) that is applicable to each of the five types, 42 U.S.C. § 1985(3) ("in *any case*

---

[3] In addition to the deficiencies in Count Two identified in this Section, the Fourteenth Amendment does not provide a general right "to be free from injury." *See, e.g.*, *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989) ("[T]he Due Process Clause of the Fourteenth Amendment, . . . does not transform every tort committed by a state actor into a constitutional violation.").
[4] Plaintiff's failure to respond is an additional reason for granting Defendants' motion as to Count Two. *See Currie v. Maricopa Cnty. Cmty. Coll. Dist.*, No. CV-07-2093, 2008 WL 2512841, at *2 n.1 (D. Ariz. June 20, 2008) (citing LRCiv 7.2(i)) ("Plaintiff does not respond to this argument, and her failure to do so serves as an independent basis upon which to grant [defendant]'s motion to dismiss.").
[5] Although Defendants do not explicitly state as much, they appear to construe Plaintiff's § 1985 claim as arising under the second clause of subsection (2). *See Bretz v. Kelman*, 773 F.2d 1026, 1027–28, 1027 n.3 (9th Cir. 1985) (holding class-based animus is an essential element of a cause of action for obstruction of justice in state court under the second clause of § 1985(2)).

- 5 -

*of conspiracy set forth in this section*, if . . . another is . . . deprived of having any right or privilege of a citizen of the United States, . . ." (emphasis added)), and cites a case involving a conspiracy claim under § 1983. (*See* Doc. 1 ¶ 79.) The Complaint contains no factual allegations supporting any of the § 1985 conspiracies. Moreover, a cause of action under the second clause of § 1985(2) or § 1985(3) requires a plaintiff to demonstrate a deprivation of a legally protected right "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting *Griffith v. Breckenridge*, 403 U.S. 88, 102 (1971)). Plaintiff does not allege any racial or class-based discriminatory animus behind any of the alleged conspirators' actions. (*See* Doc. 1.) Accordingly, Plaintiff fails to plausibly allege a violation of 42 U.S.C. § 1985.

### B. Count One – Constitutional Violation Under 42 U.S.C. § 1983

In Count One, Plaintiff alleges the individual city employees, Defendants Adams, Baker, Sharp, Garcia, and McKeown,[6] acting under the color of law, deprived him of his substantive right to liberty under the Due Process Clause of the Fourteenth Amendment in violation of 42 U.S.C. § 1983.[7] (Doc. 1 at 14–19.) Plaintiff's primary theory is that Defendants violated the state-created danger doctrine by placing dangerous dogs in Tombstone's K9 program and with Plaintiff, resulting in the attack on Plaintiff by Hawk. In this Section, the Court addresses the City Defendants and Defendant Baker's[8] argument that "failure to vet a dog or its trainer is not a constitutional tort claim." (Doc. 16 at 2–6.)

//

---

[6] Plaintiff also alleges the City of Tombstone and Marshal's Office are liable under *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). *See* discussion *infra* Section III.D.

[7] Plaintiff also asserts violations of the Arizona Constitution and procedural due process rights. (Doc. 1 ¶ 61.) However, § 1983 "does not vindicate state constitutional violations." *Holy Ghost Revival Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1174 (W.D. Wash. 2015). And, Plaintiff alleges only that Adams and Garcia told him he would be terminated if he filed a lawsuit, not that he was, in fact, terminated. (Doc. 1 ¶¶ 14, 73.) Thus, the Complaint fails to plausibly allege a deprivation of a property interest in Plaintiff's employment. *See Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (explaining that a § 1983 claim based upon procedural due process requires a showing that the plaintiff was deprived of a constitutionally protected interest).

[8] Defendant Baker joined the City Defendants' Motion, stating that as an employee of the City of Tombstone, she is similarly situated to the City Defendants. (Doc. 22 at 1–2.)

### 1. The State-Created Danger Doctrine

Defendants' first argument appears to be that the Ninth Circuit's approach to the state-created danger doctrine is incorrect and should be overturned. (*See* Doc. 16 at 5 ("There is a significant question as to whether the state-created [danger] doctrine exists at all, and if so, what legal test governs. The circuits are split and inconsistent.").) Defendants cite *Collins v. City of Harker Heights*, 503 U.S. 115 (1992), *DeShaney v. Winnebago County*, 489 U.S. 189 (1989), Judge Bumatay's dissent in *Murgia v. Langdon*, 73 F.4th 1103 (9th Cir. 2023), and cases from the Second, Third, and Eleventh Circuits. Defendants' argument is foreclosed by binding Ninth Circuit precedent.

Under § 1983, an individual may bring a claim for damages against a state actor for violations of the individual's constitutional rights. *See* 42 U.S.C. § 1983. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The clause confers substantive rights that protect "individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023) (quoting *Collins*, 503 U.S. at 125). "The Due Process Clause does not 'impose an affirmative obligation on the State' to protect" an individual, nor does it "'guarantee . . . certain minimal levels of safety and security.'" *Id.* (quoting *DeShaney*, 489 U.S. at 195). Therefore, generally, state actors are not liable under the Due Process Clause for their omissions. *Id.* (citing *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016)). The Ninth Circuit has recognized exceptions to this general rule, including the "state-created-danger doctrine." *Id.*

To state a due process claim under the state-created danger doctrine, a plaintiff must allege: (1) affirmative state conduct that exposed the plaintiff to an actual, particularized danger that he would not otherwise have faced; and (2) the state official acted with deliberate indifference to that known or obvious danger. *Id.* (citing *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011), and *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019)). The resulting harm must have been foreseeable. *Id.* (citing *Pauluk*, 836

F.3d at 1124). "In the context of public employment, although state employers have no constitutional duty to provide their employees with a safe working environment, *see Collins*, 503 U.S. at 126, . . . the state-created-danger doctrine holds them liable when they affirmatively, and with deliberate indifference, create or expose their employees to a dangerous working environment." *Id.*

The Ninth Circuit has recognized the state-created danger doctrine for nearly four decades, *see Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), and has interpreted *Collins* and *DeShaney* as consistent with the doctrine's application to the public employment context, *see, e.g.*, *Polanco*, 76 F.4th at 925–26, *Pauluk*, 836 F.3d at 1121–26 ("We hold that the state-created danger doctrine is a viable theory of due process liability under § 1983, even in workplace environments."). This Court is bound by this circuit precedent and Defendants appear to acknowledge as much. (*See* Doc. 16 at 6 ("[T]his case presents in a motion for judgment on the pleadings a clean opportunity for the Ninth Circuit to consider the allegations here and whether these allegations demonstrate a constitutional violation.").) Thus, to the extent Defendants ask this Court to repudiate the Ninth Circuit's state-created danger doctrine, the request will be denied.

### 2. Assigning a Dangerous Canine to Work with a Law Enforcement Officer Fits Within the State-Created Danger Doctrine

Defendants narrowly construe the legal issue in Count One as "whether Deputy Coby, as an employee and law enforcement officer, has a Fourteenth Amendment Due Process claim based on a failure to vet a dog, its supplier, or trainer," and broadly argue that a failure to vet dogs is an unrecognized stretch of the state-created danger doctrine. (Doc. 16 at 2, 4.) This argument ignores many of the factual allegations in the complaint and the holdings of state-created danger cases.

As noted above, a due process claim under the state-created danger doctrine has two prongs: (1) affirmative state conduct that exposed the plaintiff to an actual, particularized danger that he would not otherwise have faced; and (2) the state official acted with deliberate indifference to that known or obvious danger. *Polanco*, 76 F.4th at 926. To

satisfy the first prong, Plaintiff must plausibly allege that Defendants' affirmative actions: (1) placed Plaintiff in a worse position than he would have occupied had Defendants not acted at all; (2) created or exposed Plaintiff to an actual and particularized danger; and (3) resulted in foreseeable harm to Plaintiff. *Est. of Soakai v. Abdelaziz*, 137 F.4th 969, 983 (9th Cir. 2025) (citing *Polanco*, 76 F.4th at 926). To satisfy the second prong, Plaintiff must allege facts from which the Court can plausibly infer that Defendants knew that something was going to happen but ignored the risk and exposed Plaintiff to it anyway. *Id.* at 984 (citing *Martinez*, 943 F.3d at 1274). In this context, "deliberate indifference is a subjective standard that requires . . . that the official 'recognized an unreasonable risk and actually intended to expose the plaintiff to such risk.'" *Polanco*, 76 F.4th at 928 (quoting *Herrera v. L.A. Unified Sch. Dist*, 18 F.4th 1156, 1160–61 (9th Cir. 2021)).

Defendants provide little detail in arguing that "[f]ailure to vet dogs, . . . is an unrecognized stretch" of the state-created-danger doctrine under *Wood v. Ostrander*, *L.W. v. Grubbs*, *Pauluk*, or other cases cited by Plaintiff. (*See* Doc. 16 at 4.) They do not compare the facts of those cases with the facts of this case, nor do they differentiate between or challenge Plaintiff's allegations against specific city officials. Based on the arguments made in Defendants' Motion and drawing all inferences in Plaintiff's favor as the Court must, the Court cannot conclude that it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" in Plaintiff's complaint. *Deveratura v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006) (internal citations omitted).

First, Plaintiff's state-created danger claim is not based solely on Defendants' passive failure to vet dogs. Plaintiff alleges that some city officials *knew* the dogs Plaintiff was assigned had violent histories and changed their records and names in an attempt to conceal their histories. (*See* Doc. 1 ¶¶ 16, 33, 49.) Affirmatively purchasing dogs with violent histories, altering records to conceal the dogs' violent histories, and placing those dogs into service as police K9s where they would come into contact with police officers and the general public are actions that could meet the first prong of the state-created danger

doctrine test. (*See id.* ¶¶ 16, 33, 39, 49, 63, 70.) Plaintiff was placed in a worse position by Defendants' actions, where he faced an actual, particularized danger from his assigned canine officer with a violent history, and the harm Plaintiff suffered, from being attacked by that canine, was foreseeable. *See Est. of Soakai*, 137 F.4th at 983.

The state-created danger doctrine applies in cases where the danger is a physical condition or a human actor in the workplace. *See Pauluk*, 836 F.3d at 1125–26. Defendants do not make a substantive argument for why the state-created danger doctrine should not apply where the danger is a police dog in the workplace, which could be characterized as either a human actor (as a canine officer) or a dangerous physical condition, or something in between.

Second, Defendants' lone challenge to the state-created danger doctrine's second prong is that some allegations in the Complaint are inconsistent with deliberate indifference. (Doc. 16 at 3.) Defendants argue Plaintiff attended K9 training with Dayak and Caine, and after Plaintiff was bitten by Caine, Caine was replaced by Hawk. (*Id.* (citing Doc. 1 ¶¶ 17, 34, 45).) But replacing a dangerous dog does not disprove deliberate indifference when the dangerous dog is replaced with another dangerous dog. If city officials knew the replacement dog was dangerous, the Court could infer those officials actually intended to expose Plaintiff to that danger. *See Polanco*, 76 F.4th at 928. Similarly, that Plaintiff attended K9 training sessions with dangerous canines does little to disprove the state of mind of any city official. If an official knew the dogs had violent histories, the setting in which Plaintiff was exposed to those dogs is largely irrelevant to the deliberate indifference analysis.

In sum, the state-created danger doctrine is binding law in the Ninth Circuit and provides a substantive due process claim. Defendants' arguments fail to show, as a matter of law, that the doctrine is not applicable to the facts alleged in the Complaint.

### C. Count One – Qualified Immunity

City Defendants argue they are shielded from liability by qualified immunity. "Determining claims of qualified immunity at the motion-to-dismiss stage raises special

problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234–35 (9th Cir. 2018); *see also Sabir v. Williams*, 52 F.4th 51, 63 (2d Cir. 2022) ("[A]dvancing qualified immunity as grounds for a motion to dismiss is almost always a procedural mismatch."); *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) ("[A]t the outset of litigation, we often cannot tell from a complaint whether qualified immunity applies."). On a motion for judgment on the pleadings, "Defendants are entitled to qualified immunity if they can show (1) that the allegations in the operative complaint, accepted as true, 'do not make out a violation of a constitutional right'; or (2) 'that any such right was not clearly established at the time of the alleged misconduct.'" *Est. of Soakai*, 137 F.4th at 975–76 (quoting *Hampton v. California*, 83 F.4th 754, 765 (9th Cir. 2023)). The first prong has been addressed above; taking the allegations in the light most favorable to Plaintiff, the Complaint has alleged a violation of a constitutional right. *See supra* Section III.B.

Regarding the second prong, Defendants argue no clearly established law requires vetting of K9s or trainers and the cases relied upon by Plaintiff do not squarely govern the circumstances here. (Doc. 16 at 7–8.)[9] Defendants rely on Plaintiff's failure to meet his burden of showing his rights were clearly established at the time of the violation by identifying controlling case law. (Doc. 32 at 3.) In his response, Plaintiff fails to explicitly address the clearly established prong of qualified immunity. (*See* Doc. 26.)[10] However,

---

[9] Defendants also argue Plaintiff's asserted right was not clearly established because, in *Collins*, the Supreme Court rejected a claim involving workplace dangers that result from deliberate indifference of supervising employees and, to the extent circuit law can establish "clearly established law," Ninth Circuit precedent cannot be inconsistent with Supreme Court precedent. (Doc. 16 at 7.) As discussed above, the Ninth Circuit has recognized the state-created danger doctrine since 1989 and has interpreted the doctrine as consistent with *Collins*. In the intervening decades, the Supreme Court has denied certiorari in cases involving state-created danger claims, including as recently as 2024. *See Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2519 (2024). Defendants cite a law review article in support of their argument that circuit law cannot establish "clearly established law." (Doc. 16 at 7.) Binding precedent suggests otherwise. *See, e.g.*, *Martinez*, 943 F.3d at 1275 ("We begin [the clearly established law analysis] by looking to binding precedent from the Supreme Court *or our court*." (emphasis added)); *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) ("[T]he prior precedent must be 'controlling'— from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)).

[10] In the complaint, Plaintiff cites five Ninth Circuit cases involving state-created danger claims and the Ninth Circuit's model jury instruction for state-created danger claims. (Doc. 1 ¶¶ 62, 75–76.)

- 11 -

"because resolving whether the asserted federal right was clearly established presents a pure question of law, [the Court] draw[s] on [its] 'full knowledge' of relevant precedent rather than restricting [its] review to cases identified by the plaintiff." *Gordon v. County of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) (citing *Elder v. Holloway*, 510 U.S. 510, 516 (1994)).

A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear that every reasonable official would have understood that his actions violate that right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Courts should define the right in a way that is neither too general nor too particularized. *Gordon*, 6 F.4th at 969 (citing *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1158 (9th Cir. 2000)). A case directly on point is not required for a right to be clearly established, but existing precedent must have placed the constitutional question beyond debate. *White v. Pauly*, 580 U.S. 73, 79 (2017). Courts "routinely rely on the intersection of multiple cases when holding that a constitutional right has been clearly established." *Polanco*, 76 F.4th at 930 n.8.

For example, in *Polanco*, the court held that a prison guard's right to be free from a state-created danger—exposure to COVID-19 from the knowing transfer of potentially COVID-positive inmates to the prison—was clearly established in light of two prior cases: *L.W. v. Grubbs*, 974 F.2d 119 (9th Cir. 1992), and *Pauluk v. Savage*, 836 F.3d 1117 (9th Cir. 2016). *Polanco*, 76 F.4th at 930. The court reasoned that the employee in *Grubbs* also worked in a correctional institution and was harmed in the process of carrying out her job duties and the employer in *Pauluk* was deliberately indifferent to workplace conditions posing serious health risks. *Id.* Taken together, the court found that:

> *Grubbs* and *Pauluk* put public officials on notice that they may be liable under the state-created-danger doctrine in a scenario where: (1) the harmed party is their employee (*Grubbs* and *Pauluk*); (2) the harmed party encountered the relevant danger in the course of carrying out employment duties in a correctional facility (*Grubbs*); (3) the danger was created by requiring the employee to work in close proximity to people who posed a risk (*Grubbs*); (4) the physical conditions of the workplace contributed to the danger (*Pauluk*); and (5) the danger was a potentially fatal illness caused by breathing contaminated air (*Pauluk*).

*Id.* at 931.

Here, Ninth Circuit state-created danger precedents clearly establish Plaintiff's right, as a public employee, to be free from the workplace danger of an untrained assigned canine officer with a violent history. In *Grubbs*, the plaintiff's supervisors assigned an inmate to work with her as a cart boy when they knew the inmate: (1) was not qualified to serve as a cart boy; (2) had a history of violence against women and girls; (3) was likely to assault the plaintiff if left alone with her; and (4) would be left alone with plaintiff in the course of making rounds. 974 F.2d at 121. By failing to inform plaintiff at hiring she would be left alone with violent offenders, the defendants enhanced her vulnerability to attack by misrepresenting the risks involved in her work, and the plaintiff was attacked by the inmate. *Id.* at 122.

In *Pauluk*, the defendants assigned their subordinate employee to work in an office building infected with toxic mold. 836 F.3d at 1119. The defendants knew the building contained mold and were aware of the potential health problems associated with mold exposure. *Id.* at 1125. The defendants denied the employee's multiple transfer requests and actively tried to conceal the danger posed by the mold. *Id.* at 1119, 1125. After the transfer, the decedent began suffering from mold-related health problems that eventually led to his death. *Id.* The court held the defendants had committed a constitutional violation, but also that qualified immunity applied because, at that time, it was not clearly established that the state-created danger doctrine applied when the plaintiff's injury was caused by physical conditions in the workplace. *Id.* at 1126.

Taken together, these cases put public officials on notice that they may be liable under the state-created danger doctrine in a scenario where: (1) the harmed party is an employee who encountered the danger in the course of carrying out their employment duties at a government building that was their workplace (*Grubbs*, *Pauluk*, and *Polanco*); (2) the danger was created by assigning the employee to work in close proximity to a known risk, either a human actor (*Grubbs*) or a physical condition (*Pauluk* and *Polanco*); (3) the officials knew the actor who posed the risk had a history of violence and was not qualified

to perform its assigned job duties (*Grubbs*); and (4) the officials increased the employee's vulnerability by misrepresenting the risks involved in the employee's work (*Grubbs*) or actively concealing the danger posed by the physical condition (*Pauluk*).

This case presents such a scenario. Plaintiff has alleged that: (1) Plaintiff encountered the dangerous canines in the course of his duties as a police officer and was attacked at the police station where he worked; (2) one or more Defendants required Plaintiff to work in close proximity with Caine and Hawk as his assigned canine officers; (3) one or more Defendants knew Caine and Hawk were untrained, i.e., unqualified to act as police canines, and had violent histories; and (4) one or more Defendants actively concealed the danger posed by the dogs by altering their records and misrepresented the risk involved in Plaintiff's work by failing to inform him that untrained, aggressive dogs would be assigned to him. Thus, under the Ninth Circuit's state-created danger precedents, the unlawfulness of City Defendants' conduct was clearly established at the time of Plaintiff's injury. Although the harm here was caused by an animal, rather than a human, a virus, or a fungus, that distinction is not dispositive. *See Polanco*, 76 F.4th at 931 n.10 ("[W]e have rejected the argument that the novelty of a particular means of causing harm should, in and of itself, insulate officials from liability.").[11]

The Court's decision at this stage "'sheds little light on whether the government actors might ultimately be entitled to qualified immunity' at later stages of the proceeding." *Est. of Soakai*, 137 F.4th at 987 (quoting *Keates*, 883 F.3d at 1235). But on a motion to dismiss or motion for judgment on the pleadings, "dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *Hampton*,

---

[11] Although a dog attack may be a new cause of harm in state-created danger cases, it is well established that police dogs can inflict serious harm, and the appropriateness of their actions is often analyzed under constitutional use-of-force standards. *See Mendoza v. Block*, 27 F.3d 1357, 1361–62 (9th Cir. 1994) (holding officers' use of police dog is subject to excessive force analysis); *Chew v. Gates*, 27 F.3d 1432, 1435–36, 1440 (9th Cir. 1994) (reversing district court's decision at summary judgment that police department's policy regarding use of dogs was constitutional); *Miller v. Clark County*, 340 F.3d 959, 962–63 (9th Cir. 2003) (holding officer's use of properly trained police dog that bit suspect's arm for 60 seconds did not amount to deadly force); *Lowry v. City of San Diego*, 858 F.3d 1248, 1252–53 (9th Cir. 2017) (holding that, under the specific circumstances at issue, use of police dog who bit a suspected burglar did not amount to excessive force or an unreasonable seizure under the Fourth Amendment).

83 F.4th at 765 (quoting *Polanco*, 76 F.4th at 925); *see also Keates*, 883 F.3d at 1235 (quoting *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992)) ("If the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims."). Here, it would be premature to grant Defendants qualified immunity because the Court cannot determine, based on the complaint itself, that the right at issue was not clearly established. *See Hampton*, 83 F.4th at 765. Defendants frame the issue as whether "an employee and law enforcement officer has a due process claim based on a failure to vet a dog, its supplier, or trainer." (Doc. 16 at 2.) The Court agrees with City Defendants that a failure to vet the supplier or trainer of K9s, without more, does not amount to a constitutional violation under the state-created danger doctrine. *See Pauluk*, 836 F.3d at 1124 ("[A] plaintiff must show more than merely a failure to create or maintain a safe work environment."). But Defendants ignore other allegations in the complaint, and factual disputes remain as to whether any city official knew KnightWatch's dogs were untrained, aggressive, and had violent histories.

### D. Count One – *Monell* Claim

The City of Tombstone argues: (1) Plaintiff pleads a respondeat superior claim, rather than a *Monell* claim; and (2) because no constitutional violation occurred, the City cannot be liable under *Monell*. (Doc. 16 at 6.) As a municipality,[12] the City of Tombstone "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. A municipality may be liable under § 1983 only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* The Court asks, "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

"*Monell* claims . . . require a plaintiff to show an underlying constitutional violation." *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). As

---

[12] Municipalities have no immunity from damages liability in § 1983 cases. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 657 (1980).

discussed above, at this stage, Plaintiff has plausibly alleged a constitutional violation under the state-created danger doctrine. Thus, Tombstone's argument that it cannot be liable under *Monell* because Plaintiff has not pleaded a constitutional violation fails. The relevant question for determining whether Tombstone is liable under *Monell* is whether execution of a Tombstone policy or custom caused the violation of the state-created danger doctrine which resulted in Plaintiff's injury. *See Harris*, 489 U.S. at 385; *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016), (citations omitted) (explaining municipalities may be liable under *Monell* when: (1) implementation of its official policies or established customs inflicts the constitutional injury; (2) when the local government's omissions amount to its own official policy; or (3) an official with final policy-making authority commits the constitutional tort or ratifies a subordinate's unconstitutional decision or action and the basis for it).

Although the allegations relating to Plaintiff's *Monell* claim are interwoven with, and often difficult to distinguish from, the allegations relating to Plaintiff's § 1983 claim against the individual city officials, Plaintiff has alleged one or more city policies, practices, or customs—failure to vet, train, and supervise new employees and contractors, including those that provide police dogs to the Marshal's office, failure to supervise hiring, and deliberate indifference to the need for supervision and training within the police department—caused Plaintiff's injury. (*See* Doc. 1 ¶¶ 15, 39, 47, 51, 63, 69–72); *see also Jackson v. Barnes*, 749 F.3d 755, 763 (9th Cir. 2014) (explaining that a local government body can be held liable under § 1983 for policies of inaction where the policy amounts to deliberate indifference to plaintiff's constitutional right and the municipality could have prevented the violation with an appropriate policy). Tombstone's argument that Paragraph 66 of Plaintiff's Complaint[13] "sounds like *respondeat superior* and not a policy, practice, or custom under § 1983," ignores these allegations.

---

[13] Paragraph 66 reads in full: "Here, Tombstone and/or Marshal's Office were well aware of what the employees and agents were doing when they allowed Baker and her company to supply dogs without any type of vetting." (Doc. 1 ¶ 66.)

Tombstone also argues that if the failure to vet the supplier of police dogs amounts to a municipal policy, practice, or custom, then the individual city defendants should be dismissed. (Doc. 16 at 6.) But Plaintiff's allegations against Tombstone are not mutually exclusive of Plaintiff's allegations that individual city employees acted affirmatively and with deliberate indifference to expose Plaintiff to a known danger. Defendants cite no authority in support of the proposition that a complaint cannot plausibly allege both a *Monell* claim against a municipality and a § 1983 claim against an individual officer arising from the same unconstitutional action and injury.

At this stage, Plaintiff's *Monell* claim against the City of Tombstone may proceed.

### E.  Counts Three through Eight – Workers' Compensation Exclusivity

Finally, Defendants argue Plaintiff accepted workers' compensation benefits and therefore his state law claims are barred by workers' compensation exclusivity. (Doc. 16 at 8.) As an initial matter, to the extent Plaintiff's state law claims are brought against third party tortfeasors, rather than Plaintiff's employer or co-employees, those claims are not subject to workers' compensation exclusivity. *See Sneed v. Belt*, 635 P.2d 517, 523 (Ariz. App. 1981) (citing A.R.S. § 23-1023); (Doc. 1 ¶¶ 88–102).[14]

Defendants argue it is Plaintiff's burden to demonstrate his claims are not subject to workers' compensation exclusivity. (Doc. 16 at 8.) However, Defendants' assertions that Plaintiff accepted workers' compensation benefits are unsupported. Defendants' motion for judgment on the pleadings is not "accompanied by exhibits," as was the motion to dismiss in the case Defendants cite. *See Ringling Bros. & Barnum & Bailey Combined Shows, Inc. v. Superior Ct. in & for Pima Cnty.*, 680 P.2d 174, 178 (Ariz. App. 1983). On a motion for judgment on the pleadings, the Court cannot resolve an issue of fact by relying

//

---

[14] Defendants Baker, KnightWatch, Got Your Six K9 Rescue, All Phase K9, Consuella Via, and Alicia Via joined City Defendants' workers' compensation exclusivity arguments. (*See* Docs. 20, 22, 24.) Plaintiff does not name the City of Tombstone or any city official other than Baker in Counts Five, Six, and Seven. The Court credits Plaintiff's representation, as master of his complaint, that Defendant Baker is sued in her capacity as a private individual in Counts Five through Eight. (*See* Doc. 26 at 13.)

solely on a defendant's unsupported assertion.[15] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989) ("[J]udgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue."). The complaint does not state that Plaintiff accepted workers' compensation benefits, (*see* Doc. 1), and the City Defendants' answer simply acknowledges they intend to raise the affirmative defense of workers' compensation exclusivity at some point in the proceedings, (Doc. 5 ¶ 111). Thus, granting Defendants' judgment on the pleadings on Counts Three through Eight would be improper.[16] For this reason, the Court does not reach the parties' arguments regarding the willful misconduct exception to workers' compensation exclusivity or address the potential future application of the exclusivity defense.

### IV. Conclusion

To recap, Plaintiff fails to plausibly allege a violation of § 1985 in Count Two. The Court rejects Defendants' remaining arguments. With respect to Count One, the state-created danger doctrine is a viable theory of liability consistent with Supreme Court precedent and supported by a long line of Ninth Circuit case law. The doctrine extends to the public employment context, and some actions allegedly taken by Defendants fit the elements of a state-created danger claim. At the pleadings stage, and in light of the allegations in the Complaint, the city officials are not entitled to qualified immunity. Defendants are also not entitled to judgment as a matter of law on Plaintiff's *Monell* claim. Finally, Defendants' arguments do not apply to all of Plaintiff's state law claims, some of Plaintiff's state claims may fall outside the scope of workers' compensation exclusivity, and in the absence of supporting evidence, the Court will not venture beyond the pleadings

---

[15] Additionally, workers' compensation exclusivity in Arizona is not absolute, and issues of fact remain regarding which claims fall within the scope of Arizona's worker's compensation statute. *Stoecker v. Brush Wellman, Inc.*, 984 P.2d 534, 537 (Ariz. 1999) (en banc) (explaining that claims that do not fall within the scope of the state workers' compensation statute, including some tort claims, are not barred by exclusivity).

[16] As noted above, Defendant KnightWatch filed a joinder to City Defendants' Motion. (Doc. 24.) In a reply brief in support of its joinder, KnightWatch raised, for the first time, several arguments challenging Counts Three through Seven. (*See* Doc. 29.) Arguments raised for the first time in reply are waived. *See Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1002 (D. Ariz. 2011) ("It is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief." (internal citation omitted)).

to decide issues of fact that would have dispositive effects on Plaintiff's state-law claims.

Accordingly,

**IT IS ORDERED:**

1. Defendants City of Tombstone, Jim Adams, Marshall Sharp, Rebecca Larsen McKeown, and Jeff Garcia's Motion for Judgment on the Pleadings (Doc. 16) is **granted in part and denied in part**.

2. Count Two of Plaintiff's Complaint (Doc. 1) is **dismissed without prejudice**. Plaintiff may file an amended complaint within **14 days** of the date of this Order.

3. As to the remaining claims in Plaintiff's Complaint (Doc. 1), judgment on the pleadings is denied.

4. The Court will separately issue a Scheduling Order setting case management deadlines.

Dated this 24th day of November, 2025.

_____
Jennifer G. Zipps
Chief United States District Judge